UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FIRST COMMUNICATIONS, LLC.          )       CASE NO.  5:20-CV-02616
                                    )
            Plaintiff,              )       JUDGE JOHN R. ADAMS
                                    )
     vs.                            )
                                    )
RENTERIA, et al.                    )       **MEMORANDUM OF OPINION AND**
                                    )       **ORDER**
            Defendants.             )
                                    )
                                    )

     Pending before this Court is Defendants' Rafael Renteria ("Renteria") and Maximum

Technology, LLC ("Maximum") (collectively "Defendants"), motion to dismiss for lack of

personal jurisdiction or, in the alternative, to transfer for convenience. (Doc. 3). For the reasons

set forth below, the Court DENIES Defendants' motion to dismiss or in the alternative to transfer

venue. (Doc. 3).

## I.     **Personal Jurisdiction**

     Under Fed. R. Civ. P. 12(b)(2), a defendant may move to be dismissed from a case for lack

of personal jurisdiction. First Communications, LLC ("Plaintiff" or "FirstComm"), as the plaintiff

in this action, bears the burden of proving that the Court has personal jurisdiction over the

respective defendants. *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549

(6th Cir. 2007).

     This Court applies Ohio law in determining whether it may exercise jurisdiction over

Defendants. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir. 1988). The Court

must engage in a two-step analysis to determine personal jurisdiction under Ohio law. The Court

must determine: "(1) ... whether [Ohio's] 'long-arm' statute and the applicable Civil Rule confer

1

personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994) (quoting *U.S. Sprint Communications Co., L.P. v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1051 (Ohio 1994)). The Court must engage in both steps if Ohio's long-arm statute applies because it does not extend jurisdiction fully to the limits of due process. *Goldstein*, 638 N.E.2d at 545, n.1. Accordingly, to establish that jurisdiction is proper, both prongs of the analysis must be satisfied. *Id*.

As noted above, Plaintiff bears the burden of establishing personal jurisdiction. *American Greetings Corp*., 839 F.2d at 1168. However, when a court rules solely based upon the pleadings, a plaintiff need make only a *prima facie* showing of personal jurisdiction to survive a motion to dismiss. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998); *CompuServe, Inc., v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

## II.   <u>LAW AND ANALYSIS</u>

### A.   **Maximum Technology, LLC**

Maximum moved to dismiss Plaintiff's claims against it pursuant to Fed.R.Civ.P. 12(b)(2). Maximum has submitted the declaration of Renteria, sole Member and owner of Maximum, in support of its position.

Plaintiff's complaint asserts jurisdiction over Maximum as follows:

4. This Court has personal jurisdiction over the Defendants pursuant to Ohio R.C. §2307.382, as Renteria and Maximum have transacted business in Ohio and have caused tortious injury in Ohio in a manner designed to or reasonably expected to cause injury in Ohio.
…
6. This Court also has personal jurisdiction over Maximum and venue is proper in this Court by virtue of paragraph 12 of the First Communications Sales Agency

2

Agreement that Maximum executed with FirstComm. Paragraph 12 of the First Communications Sales Agency Agreement provides: "This Agreement, the rights of the parties, and any claims or disputes shall be governed by and construed in accordance with the laws of Ohio without regard to principles of conflicts of laws. Any litigation arising out of this Agreement shall be brought only in Summit County, Ohio, and the parties consent to the jurisdiction of its courts for such purposes."

(Compl., Doc. 1-3, PageID# 97).

Although Plaintiff asserts personal jurisdiction over Maximum by way of Ohio's long arm statute, Ohio Revised Code §2307.382, such an analysis is not necessary because Maximum assented to jurisdiction in Ohio.

"'[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system.'" *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F. 3d 718, 721 (6th Cir. 2006) (quoting *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc*., 66 Ohio St. 3d 173, 175 (1993), internal quotation marks omitted). A forum selection clause is one of those arrangements. *Id.* "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Preferred Capital*, supra, citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

In deciding whether to enforce a forum selection clause, courts must consider: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong v. PartyGaming Ltd*., 589 F.3d 821, 828 (6th Cir. 2009) (holding the

enforceability of the forum selection clause is governed by federal law.). The party opposing the forum selection clause carries the burden of demonstrating why it should not be enforced. *Id.*

In this case, on September 8, 2004, Maximum entered into an Independent Dealer's Agreement with Plaintiff's predecessor, Globalcom. (Doc. 1-3, PageID# 137). Patrick Keefe signed on behalf of Maximum. (Doc. 1-3, PageID# 143). In pertinent part, the contract stated:

> 21: GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the substantive laws of the state of Illinois, without giving effect to any choice-of law rules that may require the application of the laws of another jurisdiction.  Independent Dealer agrees that proper jurisdiction and venue, for any and all claims, is Cook County Circuit Court, Chicago, Illinois.

(Doc. 1-3, PageID# 142-43).

In 2008, FirstComm acquired Globalcom.  On February 3, 2012, Globalcom, Inc. dba First Communications and Maximum entered into a sales agency agreement. (Doc. 1-3, PageID# 150). Renteria signed on behalf of Maximum as Agent Manager. (Doc. 1-3, PageID# 152). The forum selection clause stated:

> 12.0 GOVERNING LAW:
>
> This Agreement, the rights of the parties, and any claims or disputes shall be governed by and construed in accordance with the laws of Ohio. Any litigation arising out of this Agreement shall be brought only in Summit County, Ohio, and all parties consent to the jurisdiction of its courts for such purposes.

(Doc. 1-3, PageID #152).

In 2013 Globalcom merged with FirstComm. On March 25, 2019, FirstComm and Maximum entered into a sales agency agreement. (Doc. 1-3, PageID# 155). Renteria signed on behalf of Maximum as Manager. (Doc 1-3, PageID# 157). The forum selection clause stated:

> This Agreement, the rights of the parties, and any claims or disputes shall be governed by and construed in accordance with the laws of Ohio without regard to principles of conflicts of laws. Any litigation arising out of this Agreement shall be brought only in Summit County, Ohio, and the parties consent to the jurisdiction of

4

its courts for such purposes. THE PARTIES HEREBY EACH CONSENT TO WAVIER OF ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY MATTER ARISING UNDER OR RELATING TO THIS AGREEMENT.

(Doc. 1-3, PageID# 157).

Defendants contend that there is no indication that the 2012 and 2019 agreements cancelled or superseded the 2004 agreement which established jurisdiction and venue in Cook County Circuit Court, Chicago, Illinois. (Doc. 3-1, PageID# 271-72). Plaintiff counters that its complaint asserts breach of contract as to the 2012 and 2019 contracts and that the 2004 contract expired on its own terms in 2010. (Doc. 7, PageID# 350).

According to 2004 contract, the terms of that contract were in effect for three years from the effective date unless terminated earlier, and automatically renewed for an additional three years unless appropriate notice of termination was provided by either party. (Doc. 1-3, PageID# 137). Therefore, the 2004 contract expired in 2010 at the latest. Defendants do not put forth any argument to the contrary. Defendants' argument that the 2004 contract is "competing" with the 2010 and 2019 contracts is without merit.

Defendants further assert that even if the 2012 and 2019 forum selection clauses were legally effective, enforcing them would be unreasonable and unjust. (Doc. 3-1, PageID# 272). To establish that an otherwise valid forum selection clause is unreasonable or unjust, the court must consider "whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828. The party seeking to avoid the clause, here Defendants, must establish that enforcement is more than a "mere inconvenience." *Id.*

Defendants argue that requiring them to present their case in Ohio would be seriously inconvenient because the Court does not have jurisdiction over Renteria, the sole member of

Maximum, and that there were no meaningful contacts with Ohio by either Defendant. (Doc. 3-1, PageID# 273). Defendants further argue that the contracts were executed in Illinois and "almost all of the evidence, witnesses, documents are in Illinois." (Doc. 3-1, PageID# 273). Finally, Defendants assert that enforcement of the clause is unreasonable because it will result in parallel proceedings in different forums. (Doc. 3-1, PageID# 273).

As explained below, the Court has jurisdiction over Renteria. Therefore, Defendants' arguments based on this argument are without merit. Defendants' remaining argument, therefore, is that the contracts, evidence, and witnesses are in Illinois. (Doc. 3-1, PageID# 273). Such inconveniences were foreseeable at the time the 2010 and 2019 contracts were negotiated and signed, including the forum selection clause.  "While Defendant may be dissatisfied with the litigation forum, it is not [this Court's] task to save Defendant from the consequences of an agreement it freely entered into*." Preferred Capital, Inc*., 453 F. 3d at 724. For these reasons, the Court finds that the forum selection clause is enforceable and therefore the Court has jurisdiction over Maximum.

### B.    Rafael Renteria

Renteria moved to dismiss Plaintiff's claims against him pursuant to Fed.R.Civ.P. 12(b)(2). Renteria has submitted his own declaration in support of his position.

Plaintiff's complaint asserts jurisdiction over Renteria as follows:

4. This Court has personal jurisdiction over the Defendants pursuant to Ohio R.C. §2307.382, as Renteria and Maximum have transacted business in Ohio and have caused tortious injury in Ohio in a manner designed to or reasonably expected to cause injury in Ohio.

(Doc. 1-3, PageID# 98).

6

Further, Plaintiff contends that this Court has personal jurisdiction over Renteria because Renteria is an "alter ego" of Maximum and therefore subject to the forum selection clauses. (Doc. 7, p. 11-12).

### 1.    Ohio's Long Arm Statute

Ohio's long-arm statute, Revised Code Section 2307.382, provides, in relevant part, as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

O.R.C. 2307.38.

Looking first to R.C. 2307.382(A)(1), the Supreme Court of Ohio concluded "the broad wording of the statute permits jurisdiction over non-resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 511 (6th Cir. 2006) (discussing *Ky. Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990)).

The Supreme Court of Ohio explained that to transact business in Ohio

> It is clear that R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any*

> business in Ohio. "Transact," as defined by Black's Law Dictionary (5 Ed. 1979) 1341, "* * * means to *prosecute negotiations*; to carry on business; *to have dealings* * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *.

*Ky. Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477.

Renteria asserts that "[t]here does not seem to be any precedent for holding that being employed by an Illinois company which happens to get bought by an Ohio company, and continuing to work exclusively in Illinois thereafter constitutes 'transacting business' in Ohio." (Doc. 3-1, p. 5). In opposition, Plaintiff contends that Renteria

> managed at least eighteen (18) Independent Dealers based in Ohio, provided quotes to Independent Dealers inside and outside Ohio to sell FirstComm's Services to Ohio businesses, worked with a number of Ohio wholesale partners with substantial Ohio customer bases, and developed his own Ohio-based accounts. Renteria also engaged in weekly sales calls with Pearce in Ohio, sent 3,277 emails to Ohio-based colleagues, travelled three (3) times to Ohio to expand FirstComm's cross-selling opportunities between customers in Illinois and Ohio, sought approval for his expenses from personnel in Ohio, and was paid with funds located in Ohio.

(Doc. 7, p. 14).

Renteria challenges Plaintiff's contention by, in part, attempting to undermine the affidavit of FirstComm's Chief Financial Officer, Mark Sollenberger. (Doc. 9, p. 2). In so doing, Renteria submitted a supplemental declaration. (Doc. 9, PageID# 418). Review of Renteria's supplemental declaration establishes that he did, in fact, transact business in the state of Ohio. For example, Renteria acknowledges that he sought approval for expenses from David Johnson, FirstComm's Vice President of Sales and Marketing, who was based in Ohio. (Doc. 9, PageID# 422; Doc. 7, PageID# 365). He admits that he attended a sales kickoff meeting in Akron in March 2009, that in January 2021 he took a group of agents golfing at a golf club in Ohio where FirstComm had a

membership, that he may have interacted with Ohio-based agents upon his manager's request, and that an Ohio based wholesaler was assigned to him. (Doc. 9, PageID# 422-24). Renteria further admits that, through that Ohio-based wholesaler he opened many accounts and that "these were sales I was paid commission on, but had basically no involvement with." (Doc. 9, PageID# 424).

Renteria acknowledged that after the merger of GlobalCom and FirstComm he had to "deal with people in Akron" for many support functions. (Doc. 9, PageID# 425). He admitted that he contacted Cindy Allen in Human Resources in Akron regarding employee benefits or paychecks, he would contact Jamie Rowlands who was "in charge of keeping customers happy" whenever an upset costumer contacted him to make sure "things got done." (Doc. 9, PageID# 426). Renteria acknowledged that he mentored Agent Manager, Matt Biddle, giving advice and answering questions. (Doc. 9, PageID# 426). Renteria admitted that he worked with paralegal Shannon Dieringer because there was no legal support staff in Illinois.  (Doc. 9, PageID# 426). According to Renteria, "it was standard procedure, if you sent a customer a contract and they wanted changes, to send it to" the paralegal in Akron. (Doc. 9, PageID# 426). Renteria further acknowledged emailing Jon Alexander, Mike Pearson and Dawn Dimick in finance "[i]f something needed to be pushed from a credit perspective, or needed really aggressive pricing[.]". (Doc. 9, PageID# 427). Renteria noted that he communicated with Harvey Shafle, who was "basically the computer repair guy" for software support and reporting broken or malfunctioning hardware. (Doc. 9, PageID# 427). Essentially, Plaintiff admits that he could not have conducted business without regular use of his contacts in Ohio.

Renteria acknowledged that he dealt with Independent Representatives not based in Ohio by giving them information or quotes that would permit them to bid on locations in Ohio.  He notes that "[a]ny sales I contributed to in Ohio were incident to my activities in Illinois. I was always

9

trying to be a team player, and I would facilitate sales to Ohio facilities on occasion when an opportunity came to my attention[.]" (Doc. 9, PageID# 428).

Review of the pleadings, affidavits, and submissions of the parties through the lens most favorable to Plaintiff demonstrates Renteria regularly transacted business in Ohio. Accordingly, this Court finds that it may exercise personal jurisdiction over Renteria under R.C. 2307.382(A)(1) of Ohio's long-arm statute. Because Renteria is subject to personal jurisdiction in this Court pursuant to R.C. 2307.382(A)(1) of Ohio's long-arm statute, this Court will not analyze the application of any additional sections of Ohio's long-arm statute to this matter.

### 2.    Constitutional Due Process

Constitutional due process focuses on whether Renteria had sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). The critical question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Pursuant to these considerations, personal jurisdiction over a defendant may be either specific or general, "depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)).

The Sixth Circuit has set forth a three-part test to determine the outer limits of personal jurisdiction arising out of a defendant's contacts with Ohio:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

a)      *Southern Machine Test Prong One: Purposeful Availment*

Purposeful availment occurs when a defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)) (*emphasis* in original).

As previously noted, "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause. . . ." *Calphalon*, 228 F.3d at 721.*See also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 1994- Ohio 229, 638 N.E.2d 541 (1994), fn. 1. However, the Sixth Circuit Court of Appeals has explained that despite differences between Ohio's long-arm statute and the constitutional due process requirements for personal jurisdiction, Ohio's "'transacting any business' standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction." *Burnshire*, 198 F. App'x at 430.

Having previously determined that this Court may exercise personal jurisdiction over Renteria pursuant to the "transacting any business" subsection of Ohio's long-arm statute, this Court effectively held that Renteria purposefully availed himself of the privilege of acting in Ohio

11

or caused a consequence in Ohio sufficiently substantial to support jurisdiction. As set forth above, Renteria admitted to multiple business transactions in Ohio. These transactions were, therefore, purposeful and cannot be described as random, fortuitous, or unilateral such that Renteria could not reasonably anticipate being haled to court in Ohio due to claims arising out of these business transactions. Accordingly, the first prong of the *Southern Machine* test is met.

> b)      *Southern Machine Test Prong Two: Arising From*

The second specific jurisdiction requirement is that "the cause of action must arise from the defendant's activities" in the forum state. *S. Mach. Co.*, 401 F.2d at 381. "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Opportunity Fund, LLC v. Epitome Sys.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012) (quoting *Neogen*, 282 F.3d at 892). "If a defendant's contacts with the forum state are related to the operative facts of a controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1974)).

Here, Plaintiff's asserts the following causes of action; breach of contract, misappropriation of trade secrets, fraud, civil conspiracy, tortious interference with business relationship, unfair competition, and breach of duty of loyalty. (Doc. 1-3).  These claims generally center on Defendants' Confidentially Agreement and Plaintiff's confidential information, which is allegedly maintained in Ohio.

For example, Plaintiff asserts that "Beginning in September 2004 and continuing thereafter, Renteria routinely disclosed FirstComm's Confidential Information and Trade Secrets to Maximum so that Maximum could secret contract extensions and new contracts for the FirstComm Services and earn a commission upon such sales. As a result of this scheme, FirstComm was

12

required to pay commissions on such contracts to Maximum and also to pay Renteria his base compensation and commissions on such contracts as an employee of FirstComm." (Doc. 1-3, ¶96). Plaintiff alleges that, in furtherance of his scheme, on March 25, 2019, Renteria pursued a new Independent Dealer Agreement for Maximum which in effect eliminated escalation of the commission rate for revenue exceeding certain growth targets and eliminated the requirement that Maximum bring a minimum level of new business to FirstComm each year. (Doc. 1-3, ¶55). Plaintiff alleges that Renteria caused this new agreement knowing he was going to resign and so that he could reduce Maximum business referrals to FirstComm and could move business away from FirstComm without breaching the minimum required revenue targets. (Id.). Renteria acknowledges that he asked FirstComm's paralegal, located in Ohio, to draw up the new contract. (Doc. 9, PageID# 428). Thus, Renteria concedes that he transacted business in Ohio by engaging in contract negotiations and preparation with the paralegal in Ohio, and Plaintiff points to this agreement, in part, as causing harm. As noted, Plaintiff's alleged harms stem from the alleged misuse of its trade secrets, which are allegedly maintained in Ohio. Renteria allegedly had access to this information due, at least in part, to his activities in Ohio.

Review of the pleadings, affidavits, and submissions of the parties through the lens most favorable to Plaintiff demonstrates at least a causal connection between Renteria's activities in Ohio and Plaintiff's alleged harm. The second prong of the *Southern Machine* test is met.

### c)     *Southern Machine Test Prong Three*

The third and final prong of the specific jurisdiction analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. With respect to this prong, when a court finds that the first two prongs of the

13

constitutional due process analysis are met, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When engaging in analysis for this final factor, this Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Am. Greetings Corp.*, 839 F.2d at 1169-70.

As noted above, this Court has personal jurisdiction over Maximum, and therefore, this case is properly before the Court. As Maximum's representative, Renteria is required to defend in Ohio.  Therefore, there is no added burden on Renteria to similarly defend himself in Ohio.  In addition, Ohio has a strong interest in obtaining relief for its citizens, and any resolution of this matter in Ohio would meet the interests of other states in efficiently handling this controversy. Accordingly, weighing these considerations, the third *Southern Machine* prong is met

## III.    <u>Conclusion</u>

For the reasons set forth above, the Court finds it may exercise personal jurisdiction over Defendants. Defendants' motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is therefore DENIED. The Court further DENIES Defendants' request to transfer the matter to Illinois for Defendants' convenience.

IT IS SO ORDERED.

DATED:  January 3, 2022                    */s/ John R. Adams*
                                                          Judge John R. Adams
                                                          UNITED STATES DISTRICT COURT

14